UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA CAREY AS EXECUTRIX OF | ) | CASE NO.  1:23-cv-01311 |
| THE ESTATE OF RONALD B. CAREY, | ) | |
| *et al.*, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEYBANK, N.A., *et al.,* | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

Before the Court is Defendant KeyBank N.A.'s ("KeyBank" or "Key") unopposed

motion to dismiss (Doc. No. 9), KeyBank's supplemental motion to dismiss (Doc. No. 21), and

Plaintiffs' motion to transfer venue to the Western District of New York (Doc. No. 26).  For the

following reasons, the motion to dismiss is GRANTED and the motion to transfer is DENIED.

I.    **BACKGROUND**

   **A. Factual Allegations**

Plaintiffs seek declaratory relief against Defendants KeyBank, Gross Polowy, LLC

("Gross Polowy"), and Moran Karamouzis LLP ("Moran Karamouzis"), regarding real property

located in Buffalo, New York (the " New York Property").  (Doc. No. 8 at 177, ¶¶ 5-9.)[1]

Plaintiffs allege that they are successors in interest to the New York Property following the death

of Ronald B. Carey in 2015.  (*Id.* at 178, ¶ 10; 179, ¶ 18.)  Plaintiff Mark Carey is Ronald

Carey's son, and Plaintiff Linda Carey is Ronald Carey's sister.  (*Id.* at 178, ¶ 11.)

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document
and PageID# rather than any internal pagination.

In 2013, Ronald Carey executed a $104,000 loan (the "Loan") on the New York Property.  (*Id.* ¶ 12.)  Plaintiffs allege that Ronald and Mark Carey made monthly payments of $519.26 on the Loan through First Niagara Bank ("First Niagara").  (*Id.* ¶¶ 14, 16.)  Plaintiffs allege that after Ronald Carey's death, First Niagara "added Mark's name to the Loan or at least to its database as an authorized party on the Loan," which Plaintiffs refer to this event as the "Assumption" of the Loan.  (*Id.* at 179, ¶ 20.)  Mark Carey was able to "make Loan payments . . . without interruption or any issues."  (*Id.* at 180, ¶ 21.)

In July 2016, First Niagara merged with KeyBank.  (*Id.* ¶ 22.)  Plaintiffs allege that KeyBank "inexplicably refused to accept payments" from Mark Carey or add him as an account holder.  (*Id.* ¶ 25; *id.* at 182, ¶ 33.)  In October 2017, a lawyer from Moran Karamouzis informed Plaintiffs that "the only way to 'add' Mark to the account would be to refinance the loan as all of the loan documentation is in the name of Ronald B. Carey only."  (*Id.* at 183, ¶ 39.)  Plaintiffs allege that requiring refinancing "was a clear breach of the terms of the Loan."  (*Id.* ¶ 40.)

In December 2021, KeyBank and Gross Polowy initiated a state foreclosure action on the New York Property.  (*Id.* at 191, ¶ 89.)[2]  The foreclosure complaint alleged that Ronald Carey failed to comply with the terms of the Loan by not making the payment that was due on February 1, 2019, and subsequent payments.  (*Id.* ¶ 90.)  On January 31, 2023, Plaintiffs filed an answer, defenses and counterclaims.  (Doc. No. 21 at 1155 (citing Doc. No. 21-7).)  Plaintiffs allege that Defendants "used unfair and unconscionable means to collect the Loan from Plaintiffs" by refusing to allow them to assume and enforce the Loan, seeking to hold Plaintiffs liable for the

---

[2] KeyBank's supplemental motion to dismiss clarifies that the foreclosure action was initiated in March 2022, but states that "the discrepancy between the two dates [] is a distinction without a difference."  (Doc. No. 21 at 1155 n.1.)

Loan's principal, interest, late charges, taxes, costs and attorney's fees, and attempting to have the New York Property sold at auction.  (Doc. No. 8 at 194, ¶ 104.)

On March 30, 2023, KeyBank filed a motion to dismiss Plaintiffs' counterclaim and a motion for summary judgment.  (*See id.* at 192, ¶¶ 94-97.)  On July 6, 2023, the state court issued an order granting summary judgment, default, and reference to compute.  (Doc. No. 21 at 1156 (citing Doc. No. 21-8).)  On October 11, 2023, the state court issued an order and judgment of foreclosure and sale.  (*Id.* (citing Doc. Nos. 21-9, 21-10).)

### B.  Procedural History

On July 3, 2023, Plaintiffs filed their complaint.  (Doc. No. 1.)[3]  On September 20, 2023, Plaintiffs filed an amended complaint.  (Doc. No. 8.)  Plaintiffs' amended complaint included eight counts: (1) declaratory relief against KeyBank; (2) breach of instruments against KeyBank; (3) breach of fiduciary duty against KeyBank; (4) fraud against KeyBank; (5) violation of the Fair Debt Collection Practices Act ("FDCPA") against Gross Polowy and Moran Karamouzis; (6) violation of the Real Estate Settlement Practices Act ("RESPA") against KeyBank; (7) violation of the Truth in Lending Act ("TILA") against KeyBank; and (8) conspiracy against all Defendants.  (*Id.* at 186–98, ¶¶ 54–129.)

On October 4, 2023, KeyBank filed a Rule 12(b)(6) motion to dismiss.  (Doc. No. 9.)[4] On November 17, 2023, Plaintiffs moved for an extension of time to respond to KeyBank's motion to dismiss, which the Court granted.  (Doc. No. 16; November 20, 2023 Order.)

---

[3] On August 30, 2023, Defendant KeyBank filed a motion to dismiss.  (Doc. No. 6.)

[4] On October 18, 2023, the Court denied KeyBank's first motion to dismiss as moot.  (October 18, 2023 Order.)

On November 30, 2023, KeyBank moved for leave to supplement its motion to dismiss. (Doc. No. 18.)  On December 19, 2023, Plaintiffs filed two motions requesting additional time to respond Defendants' motions to dismiss.  (Doc. Nos. 19, 20.)  Also on December 19, 2023, the Court granted KeyBank's and Plaintiffs' motions.  (December 19, 2023 Orders.)  The Court extended Plaintiffs' deadline to respond to the motions to dismiss to January 7, 2024.  (*See id.*)

KeyBank filed its supplemental motion to dismiss on January 2, 2024.  (Doc. No. 21.) On January 8, 2024, Plaintiffs filed an unopposed motion to alter the Court's December 19, 2023 Order extending Plaintiffs' deadline to respond to the motions.  (Doc. No. 22.)  On January 9, 2024, the Court extended Plaintiffs' deadline to respond to February 2, 2024.  (January 9, 2024 Order.)

On January 28, 2024, Plaintiffs filed a motion to reconsider, alter or amend the Court's January 9, 2024 Order.  (Doc. No. 24.)  In this motion, Plaintiffs requested relief under Federal Rules of Civil Procedure 59 and 60 based on KeyBank's "unexpected demand to proceed with foreclosure."  (*Id.* at 1311-13.)  Specifically, Plaintiffs requested the Court "memorialize and enforce the Settlement including enjoining Foreclosure through the All-Writs Act and Anti[-]Injunction Act[] and all other just and proper relief such as [j]oinder" of other parties "to this action as needed."  (*Id.* at 1323.)  On January 29, 2024, the Court denied this motion because Plaintiffs failed to show they were entitled to the requested relief.  (Doc. No. 25.)

On February 2, 2024, Plaintiffs filed a motion to transfer to the Western District of New York.  (Doc. No. 26.)  Plaintiffs did not file any opposition to Defendants' motions to dismiss. On February 16, 2024, Defendants filed oppositions to Plaintiffs' motion to transfer.  (Doc. Nos. 27, 28.)

## II.     LAW AND ANALYSIS

### A.  Legal Standard for Motions to Dismiss

When addressing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The sufficiency of the complaint is tested against the notice pleading requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).

Rule 8(a)(2) requires a plaintiff to allege facts "providing not only fair notice of the nature of the claim, but also grounds on which the claim rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) (internal quotations omitted).  "And the complaint's factual allegations, taken as true, 'must be enough to raise a right to relief above the speculative level.' That means the complaint must allege facts supporting an inference that the defendant's liability is plausible, rather than just possible."  *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 87 F.4th 315, 320 (6th Cir. 2023) (quoting *Twombly*, 550 U.S at 555).  As such, the court will not permit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."  *Iqbal*, 556 U.S. at 778 (citations omitted).

When a court is presented with a Rule 12(b)(6) motion, it may only consider material related to the pleadings.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  Documents are considered related to the pleadings if they are attached to either the complaint or the defendant's motion to dismiss, referred to in the complaint, and central to the plaintiff's claims.  *Id.*  A court has complete discretion to determine "whether or not to accept

any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir. 1997) (citation omitted).

## B.  Analysis

The Court may interpret the absence of a response to a motion to dismiss as a waiver of opposition.  *Ray v. United States*, No. 1:11-CR-115-HSM-CHS-1, 1:16-CV-141, 2017 WL 2350095, at *2 (E.D. Tenn. May 30, 2017) (citing *Notredan, LLC v. Old Republic Exch. Facilitator Co.*, 531 Fed. App'x. 567, 569 (6th Cir. 2013) (explaining that failure to respond to or otherwise oppose a motion to dismiss operates as both a waiver of opposition to, and an independent basis for granting, the unopposed motion)); *Demsey v. R.J. Reynolds Tobacco Co.*, No. 1:04CV1942, 2005 WL 1917934, at *2 (N.D. Ohio Aug. 10, 2005) ("The court's authority to grant a motion to dismiss because it is unopposed is well established."); *see also Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x. 328, 331 (6th Cir. 2008) ("Thus, where, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived.").

Nonetheless, the Court will assess whether Plaintiffs' complaint fails to state a claim under Rule 12(b)(6).  Plaintiffs' complaint brings seven claims against KeyBank.

### 1.  Claim Preclusion

KeyBank argues that the entire complaint is barred by claim preclusion.  (Doc. No. 21 at 1158-60.)  Claim preclusion requires that "a final judgment on the merits bar[] further claims by parties or their privies based on the same cause of action."  *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009).  Under the full faith and credit statute, a federal court must afford a state court judgment "the same preclusive effect that the judgment would have in state court."  *In re Fordu*, 201 F.3d 693, 703 (6th Cir. 1999) (citing 28 U.S.C. § 1738).  In order to determine

6

what preclusive effect a judgment would have in state court, the Court "must apply the law of the state in which the prior judgment was rendered[.]"  *Id.*

Here, the Court must apply New York law.  (*See* Doc. No. 8.)  To establish claim preclusion, "a party must show: (1) a final judgment on the merits, (2) identity or privity of parties, and (3) identity of claims in the two actions."  *Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 96 N.E.3d 737, 744 (Ct. App. N.Y. 2018).  KeyBank argues that all three elements are present here because the New York foreclosure judgment "is a final decision on the merits, and the Foreclosure involved the same parties or their privies with KeyBank as the plaintiff and Plaintiffs as defendants" and "this action involves claims that were, or could have been, asserted in the Foreclosure."  (Doc. No. 21 at 1160.)

For the first element, the state court's July 6, 2023 foreclosure and summary judgment order is a final judgment on the merits.  *See Borrani v. Nationstar Mortg., Inc.*, 820 F. App'x 20, 23 (2d Cir. 2020).  For identity of the parties, both the foreclosure action and the present case involve KeyBank, Linda Carey as the executor of the estate of Ronald Carey, and Mark Carey.  (*Compare* Doc. No. 8 *with* Doc. No. 21-6.)

For the final element, "identity of causes of action" means "that the second action must involve the same 'claim' or 'nucleus of operative fact' as the first."  *In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006).  Here, Plaintiffs' complaint includes claims that do not involve the same "nucleus of operative fact" as the claims in the foreclosure action.  Specifically, Plaintiffs' fifth count alleges Defendants Gross Polowy and Moran Karamouzis[5] violated the FDCPA for actions that occurred *during* the foreclosure proceeding.  (*See* Doc. No. 8 at 191–92, ¶¶ 89–108.)  Because these events postdate the filing of the foreclosure complaint in state court, claim

---

[5] Plaintiffs' original complaint also named KeyBank in this count.  (*See* Doc. No. 1 at 12.)

7

preclusion cannot bar the entirety of Plaintiffs' complaint. *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp. Inc.*, 590 U.S. 405, 414 (2020) ("Claim preclusion generally 'does not bar claims that are predicated on events that postdate the filing of the initial complaint.'") (quoting *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 600 (2016)).

### 2. Declaratory Relief

Plaintiffs' declaratory judgment claim is premised on KeyBank's enforcement of a "due on sale" mortgage clause and alleged violations of the Truth in Lending Act ("TILA"). (Doc. No. 8 at 186–88, ¶¶ 55–57 (discussing due on sale clauses), ¶¶ 58–69 (discussing TILA violations).) Plaintiffs "request[] the Court declare and establish they are the successors to Ronald Carey on the Loan under the valid Assumption, relating back to his death, to address, prevent and end Key's ongoing illegal dispute of the Assumption." (*Id.* at 188, ¶ 70.)

KeyBank argues that this claim should be dismissed for three reasons: KeyBank did not enforce a due on sale clause, TILA's protections do not apply to Mark Carey, and declaratory relief is "not an appropriate means to address past conduct." (Doc. No. 9 at 212–14.) For the due on sale clause, KeyBank argues that "both the factual allegations in the Amended Complaint and the Foreclosure Complaint show that KeyBank foreclosed because 'Ronald B. Carey failed to comply with the conditions of the note and mortgage by not making the payment that was due on February 1, 2019 and subsequent payment.'" (*Id.* at 213 (quoting Doc. No. 9-5 at 267).) KeyBank asserts that it did not "attempt[] to foreclose or otherwise declar[e] a default because the Property was allegedly transferred to Mark." (*Id.*)

KeyBank argues that Mark Carey "did not assume the Loan and the successor in interest regulations were not in effect when [Ronald Carey] died." (*Id.* at 213–14.) Under TILA, assumption of a loan requires written approval from the lender. (*Id.*) KeyBank asserts that

8

Plaintiffs' complaint "does not allege that KeyBank expressly agreed in writing that Mark could

assume the Loan." (*Id.* at 213.)  Instead Plaintiffs rely on allegations that KeyBank "admitted by

silence" that Mark assumed the Loan by providing him information and accepting payments.

(*Id.* at 213–14 (citing Doc. No. 8, at 179–82, ¶¶ 20, 21, 23, 31, 32).)  KeyBank asserts that these

actions are not equivalent to written approval. (*Id.* at 214.)  KeyBank further notes that TILA

took effect in 2018, several years after Mark Carey allegedly assumed the Loan. (*Id.*)

     Next, KeyBank argues that "[t]he purpose of declaratory judgments 'is to provide a

mechanism by which parties can eliminate uncertainty regarding their legal rights and

obligations quickly and conclusively.'" (*Id.* at 212.)  Here, Plaintiffs' declaratory judgment

claim is premised on KeyBank's past actions, not any future uncertainty. (*Id.* at 212–13.)

Accordingly, KeyBank argues that Plaintiffs' claim for declaratory judgment should be

dismissed because declaratory relief is "not an appropriate means to address past conduct." (*Id.*)

     Looking at Plaintiffs' allegations, the foreclosure did not enforce a due on sale clause, but

rather addressed Ronald Carey's failure "to comply with the conditions of the note and mortgage

by not making the payment that was due on February 1, 2019 and subsequent payments." (Doc.

No. 8 at 191, ¶ 93.)  For their TILA claims, Plaintiffs have not alleged why the Court should find

that KeyBank's silence constituted tacit approval of Mark Carey as the successor to the Loan.

Likewise, Plaintiffs have not alleged why the Court should retroactively apply TILA's

regulations to Mark Carey's alleged assumption of the Loan. *See Campbell v. Nationstar

Mortg.*, 611 Fed. App'x 288, 298 (6th Cir. 2015) (declining to apply the TILA retroactively).

Lastly, Plaintiffs have not pleaded why the appropriate remedy for enforcement of a due on sale

clause and violations of TILA is declaratory judgment. *See AmSouth Bank v. Dale*, 386 F.3d

763, 786 (6th Cir. 2004) (holding that the "useful purpose served by [a] declaratory judgment action is the clarification of legal duties for the future, rather than the past harm[.]").

Plaintiffs have not pleaded facts or provided legal support to demonstrate that they have plausibly stated a claim for declaratory relief.

### 3.  Breach of Instruments

Count Two alleges that KeyBank breached the Loan by disputing the Assumption, refusing to communicate with Plaintiffs, failing to accept and apply Plaintiffs' payments on the Loan, and improperly adding monthly late fees and interest to the Loan's balance.  (Doc. No. 8 at 188–89, ¶¶ 73–74.)  To Plaintiffs, these improper fees and interest did not comply with the terms of the Loan and "preclud[ed] Mark from curing the Loan's alleged arrears."  (*Id.* at 189, ¶ 74.)

KeyBank argues that Plaintiffs have not established that "the parties had a contract, that KeyBank failed to comply with that contract's terms, that Plaintiffs complied with their contractual obligations, and that Plaintiffs were damaged by KeyBank's failures."  (Doc. No. 9 at 214.)  KeyBank highlights that the terms of the mortgage require that the lender approve any assumption in writing.  (*Id.* at 215.)  KeyBank emphasizes that Plaintiffs' complaint does not identify or attach any writing that fulfills this requirement.  (*Id.*)  KeyBank argues that without "such writing, there is no contract between KeyBank and Plaintiffs" and the claim fails as a matter of law.  (*Id.*)

To establish breach of contract, a plaintiff must plausibly allege "that (1) a contract existed, (2) one party fulfilled his obligations, (3) the other party failed to fulfill his obligations, and (4) damages resulted from that failure."  *Quest Workforce Sols., L.L.C. v. Job1USA, Inc.*, 75 N.E. 3d 1020, 2016-Ohio-8380 (6th Dist. 2016).  Here, Plaintiffs' only allegation that they entered into a contract with KeyBank is a conclusory statement that that KeyBank "ratified the

Assumption of the Loan [] by its subsequent acquisition of Niagara, its communication with Plaintiffs on the Assumption as well as its acceptance of their Loan Payments consistent with the Assumption." (Doc. No. 8 at 185, ¶ 52.) Moreover, regarding Plaintiffs' fulfillment of their obligations, Plaintiffs have only alleged that "[a]ll conditions precedent to suit occurred, are fulfilled, or waived, or their occurrence or fulfillment was unnecessary or futile." (*Id.* ¶ 53.) Taken together, Plaintiffs have not pleaded facts or provided legal support to demonstrate that they have plausibly stated a claim for breach of contract against KeyBank.

### 4. Breach of Fiduciary Duty

Count Three alleges that KeyBank "breached its fiduciary duty to Plaintiffs by baselessly disputing and rejecting the Assumption, which Niagara ratified and which Key did as well, which it later disregarded in its own self-interest to foreclose and resell the Property for its profit." (Doc. No. 8 at 189, ¶ 79.)

KeyBank argues that under Ohio law "a debtor-creditor relationship does not give rise to a fiduciary relationship." (Doc. No. 9 at 216.) Accordingly, this claim fails as a matter of law because KeyBank, as Ronald Carey's creditor, did not owe Ronald Carey any fiduciary duties. (*Id.*) Nor could KeyBank owe any purported successors in interest fiduciary duties. (*Id.*)

To establish breach of fiduciary duty, a plaintiff must plausibly allege "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." *Akerstrom v. 635 W. Lakeside, Ltd.*, 105 N.E. 3d 440, 2018-Ohio-98 (8th Dist. 2018). Plaintiffs allege that a "fiduciary duty existed between Plaintiffs and Key in whom they reposed a special trust and confidence, based on Key's initial written assurances that it would recognize the Assumption as did Niagara which Key had ratified by its course of conduct." (Doc. No. 8 at 189, ¶ 78.) This conclusory statement does not demonstrate

that a duty arising from a fiduciary relationship existed.  Plaintiffs have not plausibly stated a

claim for breach of fiduciary duty against key.

### 5.  Fraud

Count Four alleges that KeyBank "misrepresented material facts to Plaintiffs, namely

they would be recognized as Ronald Carey's successors under the Loan per the Assumption[.]"

(Doc. No. 8 at 190, ¶ 84.)  Plaintiffs allege that KeyBank knew these statements were false and

never intended to recognize Plaintiffs as successors.  (*Id.* ¶ 85.)  According to Plaintiffs,

KeyBank made these misrepresentations to "induce Plaintiffs to rely upon them in not otherwise

seeking legal alternatives to enforce the Assumption."  (*Id.* ¶ 86.)

KeyBank highlights that Federal Rule of Civil Procedure 9(b) creates a heightened

pleading requirement for fraud claims.  (Doc. No. 9 at 217.)  KeyBank argues that Plaintiffs have

not met this requirement because the complaint "does not allege any facts to support the blanket

assertion that KeyBank 'misrepresented material facts to Plaintiffs.'"  (*Id.*)  KeyBank highlights

that the complaint does not include allegations of specific parties or participants who made these

alleged representations, nor the time or place these misrepresentations took place.  (*Id.*)

Federal Rule of Civil Procedure 9(b) requires that a party "state with particularity the

circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To establish a claim of

fraudulent misrepresentation, a plaintiff must plausibly allege:

> (1) a representation or, when a duty to disclose exists, concealment of a fact, (2)
> material to the transaction at hand, (3) made falsely, with knowledge of its falsity
> or with such utter disregard and recklessness as to whether it is true or false that
> knowledge may be inferred, (4) with the intent to mislead another into relying upon
> it, and (5) justifiable reliance upon the representation or concealment, and (6) a
> resulting injury proximately caused by the reliance.

*Hubbard Family Trust v. TNT Land Holdings, LLC*, 9 N.E.3d 411, 2014-Ohio-772 (4th Dist.

2014).  Here, Plaintiffs have not included allegations regarding the circumstances constituting

KeyBank's alleged fraud or mistake.  Plaintiffs therefore do not meet Rule 9(b)'s heightened pleading standards.

Moreover, Plaintiffs have not identified when, if ever, KeyBank represented to Plaintiffs that they were successors to the Loan.  Instead, Plaintiffs alleged that KeyBank, through its attorney, informed Plaintiffs that it would not recognize them as successors to the Loan without refinancing.  (Doc. No. 8 at 183, ¶ 39.)  At most, Plaintiffs have alleged that KeyBank did not continue First Niagara's practice of allowing Mark Carey to make payments on the Loan.  Accordingly, Plaintiffs have failed to plausibly allege that it was KeyBank who falsely represented to Plaintiffs that they were the successors to the Loan and that it was justifiable to rely on such a representation.

### 6.  RESPA Violation

Count Six alleges that KeyBank is subject to the Real Estate Settlement Practices Act ("RESPA") because "as a lender particularly as the Loan may be assumed without its approval." (Doc. No. 8 at 195, ¶ 110.)  This count further alleges that KeyBank violated RESPA by failing to provide a written response to Plaintiffs' Qualified Written Requests ("QWRs") seeking information relating to servicing the Loan.  (*Id.* at 195–96, ¶¶ 111–16.)  Plaintiffs allege that they "repeatedly and continuously issued QWRs demanding that Key correct its erroneous assertions that [the] Loan Obligor was still Ronald Carey, contrary to the Assumption binding Plaintiffs, Niagara and Key."  (*Id.* at 196, ¶ 115.)  Plaintiffs allege that KeyBank violated RESPA by "erroneously identify[ing] Ronald Carey as the loan obligor, ignoring the notices of Plaintiffs to the contrary and failing to correct its records to reflect them as the successors."  (*Id.* ¶ 117.) Plaintiffs allege that KeyBank erroneously stated that the Loan was in default and in danger of foreclosure.  (*Id.* ¶ 118.)

KeyBank disputes Plaintiffs' allegation that the Loan may be assumed without its approval. (Doc. No. 9 at 207–08.) KeyBank further argues that even if this allegation were true, Plaintiffs' claim would still fail because "RESPA only applies to '[a]ny assumption in which the lender's permission is both required and obtained[.]'" (*Id.* at 208 (quoting 12 C.F.R. § 1024.5(b)(5)).)

For Plaintiffs' alleged QWRs, KeyBank emphasizes that this term has a specific definition that only encompasses "correspondence that relates to the 'servicing' of the loan." (*Id.* at 208–09.) This definition "ensures that the statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to services." (*Id.* at 209 (quoting *Kavanagh v. Specialized Loan Servicing, LLC*, No. 3:17-cv-892, 2020 WL 1276580, at *29 (N.D. Ohio Mar. 17, 2020).) KeyBank further highlights that servicers are only obligated to respond to QWRs that are sent to the servicer's designated address. (*Id.*) KeyBank emphasizes that the complaint does not include copies of the alleged QWRs, or information about when or where these requests were sent. (*Id.*) Without these details, KeyBank argues that the complaint "does not contain facts sufficient to reasonably infer that the alleged correspondence satisfied the definition of a QWR such that KeyBank would have any obligation to respond." (*Id.*)

Lastly, KeyBank notes that RESPA has a three-year statute of limitations, which would bar any claims related to alleged QWRs sent prior to July 2020. (*Id.*)

Plaintiffs have not plausibly stated that RESPA should apply to this in the absence of KeyBank's approval of the Assumption. Plaintiffs have not alleged that they sent QWRs to which KeyBank was obligated to respond under RESPA. Moreover, Plaintiffs have also not alleged that their RESPA claim is timely. *See Johnston v. MidFirst Bank*, No. 5:14–CV–466,

2015 WL 5175147, at *7 (N.D. Ohio Sept. 3, 2015) (applying three-year statute of limitations to QWR claims).

### 7. TILA Violation

Count Seven alleges that KeyBank violated TILA by "continuously demanding . . . that Plaintiffs 'refinance' the Loan as the sole means of 'adding' Mark as a party to the Loan" while "refusing to recognize the Assumption." (Doc. No. 8 at 197, ¶ 123.)  Plaintiffs further allege that KeyBank's misconduct was "purely to benefit itself to obtain more compensation from a new loan on the Property which is not in the best interest of the Plaintiffs." (*Id.* ¶ 124.)

KeyBank argues that none of the TILA provisions referenced in the complaint require KeyBank to add Mark Carey to the Loan. (Doc. No. 9 at 210 (discussing 15 U.S.C. §§ 1640, 1641 and 12 C.F.R. § 1026.20(b) and Doc. No. 8 at 186, ¶¶ 58; 196–97, ¶¶ 122, 126).)  KeyBank acknowledges that 12 C.F.R. § 1026.20(f) requires certain disclosures for confirmed successors in interest but argues that this regulation did not go into effect until 2018. (*Id.*)  KeyBank acknowledges that a refusal to accept and apply payments may create liability under 15 U.S.C. § 1639f but notes that the complaint does not site this section. (*Id.* at 210.)  Furthermore, section 1639f is subject to a one-year statute of limitations, which would bar claims related to Mark Carey's unsuccessful attempts to make payments in 2016 and 2017. (*Id.* at 210–11.)  KeyBank argues that "[e]ven making every inference in favor of Plaintiffs, the statute of limitations expired long before Plaintiffs filed the Complaint in 2023." (*Id.*)

Plaintiffs have not alleged that TILA required KeyBank to add Mark Carey to the Loan as a successor.  Plaintiffs also have not plausibly stated why the Court should retroactively apply TILA.  *See Campbell*, 611 Fed. App'x at 298.  Lastly, Plaintiffs have not alleged that their claim is timely under TILA's one-year statute of limitations.  *See Trimm v. Fifth Third Mortg. Co.¸* No.

3:10-CV-1602, 2010 WL 3515596, at *2 (N.D. Ohio Sept. 3, 2010) (discussing TILA's statute of limitations).

### 8.  Conspiracy

Count Eight alleges conspiracy by all Defendants.  (Doc. No. 8 at 197, ¶¶ 125–29.) Specifically, Plaintiffs allege that Defendants conspired

> to disregard the Assumption, foreclose the Loan against the Property and hold Plaintiffs in default of the Loan instead of recognizing the Assumption to effect the other misconduct alleged here, to again harm them for which they are liable contrary to their bare denials that they did not do so.

(*Id.* ¶ 127.)

KeyBank argues that this count is simply a "rote recitation of the elements of conspiracy."  (Doc. No. 9 at 218.)  KeyBank emphasizes that Plaintiffs do not allege "any malicious combination of KeyBank, together with Defendants Gross Polowy, LLC and Moran Karamouzis, LLP causing injury to Plaintiffs."  (*Id.*)  Likewise, KeyBank argues that the complaint does not allege the existence of any unlawful act independent from the conspiracy itself.  (*Id.*)

To establish civil conspiracy, a plaintiff must plausibly allege "(1) a malicious combination of two or more persons, (2) causing injury to another person or property, and (3) the existence of an unlawful act independent from the conspiracy itself."  *Sal's Heating & Cooling Inc. v. BERS Acquisition Co., LLC*, 192 N.E. 3d 537, 2022-Ohio-1756 (8th Dist. 2022).  Here, Plaintiffs' allegations do not move beyond reciting the elements of a civil conspiracy claim. Plaintiffs do not allege how KeyBank, with Gross Polowy and Moran Karamouzis, maliciously combined to cause injury to the Plaintiffs.  Plaintiffs' allegations also do not establish the existence of an unlawful act independent from the conspiracy itself.

16

In sum, each of Plaintiffs' claims against KeyBank fail under Rule 12(b)(6). KeyBank's motion to dismiss is therefore GRANTED.

### C. Legal Standard for Motions to Transfer

28 U.S.C. § 1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) allows for transfer "only if the transferor court is a proper venue." *Rugged Cross Hunting Blinds, LLC v. DBR Fin., Inc.*, No. 1:23-cv-1944, 2023 WL 11780377, at *2 (N.D. Ohio Oct. 30, 2023) (citing *Martin v. Stokes*, 623 F.2d 469, 471 (6th Cir. 1980)). A transfer of venue under §1404(a) "may not be granted when the district court does not have personal jurisdiction over the defendants." *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993).

28 U.S.C. § 1406(a) states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." In contrast to § 1404(a), § 1406(a) "allows a district court to grant a change of venue when venue is improper in the original forum." *O'Brien Constr., Inc. v. Miller*, No. 1:19-cv-1451, 2020 WL 1187259, at *4 n.3 (N.D. Ohio Mar. 12, 2020) (citing *Pittock*, 8 F.3d at 329). This section does not require a court to have personal jurisdiction in order to enact the transfer. *Id.*; *see also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases . . . whether the court in which it was filed had personal jurisdiction over the defendants or not."). A "district is 'wrong' within the meaning of § 1406" when there is "either improper venue or lack of personal jurisdiction." *Jones v. Grants Automotive*, No. 5:21-cv-2366, 2022 WL 874284, at *1 (N.D. Ohio Mar. 24, 2022) (citing

*Martin*, 623 F.2d at 474).  Accordingly, §1406(a) "provides the basis for any transfer made for the purpose of avoiding an obstacle to adjudication on the merits in the district court where the action was originally brought."  *Martin*, 623 F.3d at 474.

"To succeed in its motion to transfer, the moving party must show the preponderance of the balance in his favor."  *Gdovin v. Catawba Rental Co. Inc.*, 596 F.Supp. 1325, 1326 (N.D. Ohio 1984) (discussing transfer under §1404(a)); *see also Lexington v. Cheek & Zeehadelar, LLP*, No. 1:06-cv-2029, 2007 WL 593560, at *1 (N.D. Ohio Feb. 21, 2007) ("The party moving for the transfer has the burden of showing that these factors weigh 'strongly' in favor of transfer."); *The Lincoln Nat'l Life Ins. Co. v. Harnett*, No. 2:13-cv-02906, 2014 WL 12526277, at *5 (W.D. Tenn. July 1, 2014) (discussing § 1404(a) and § 1406(a) and holding that "under all these jurisdictional statutes, the moving party bears the burden of ping, by a preponderance of the evidence, that another district court is the more convenient forum").

### D.  Analysis

Plaintiffs moved to transfer this case to the Western District of New York under 28 U.S.C. §§ 1404(a) and 1406(a).[6]  (*See* Doc. No. 26.)  Defendants raised several arguments in opposition to this motion, including that Plaintiffs selected the Northern District of Ohio as the forum for this action and that none of facts cited in Plaintiffs' motion were newly discovered. (*See* Doc. Nos. 27, 28.)  KeyBank also emphasized that it would be particularly prejudiced by transfer to the Western District of New York because KeyBank is subject to jurisdiction in this

---

[6] Plaintiffs' motion to transfer does not discuss 28. U.S.C. § 1631, though "sections 1406(a) and 1631 are 'similar provision[s]' that 'confer broad discretion in ruling on a motion to transfer.'" *Jackson v. L&F Martin Landscape*, 421 Fed. App'x 482, 484 (6th Cir. 2009) (quoting *Stanifer v. Brannan*, 564 F.3d 455, 456–57 (6th Cir. 2009)).  Therefore, the Court need not address transfer under § 1631.  However, for the same reasons the interest of justice does not weigh in favor of a transfer under § 1406(a), the interest of justice would not support a transfer under § 1631.  *See id.* at 484 n.3.

district and has already "briefed its Motion to Dismiss multiple times in Plaintiffs' chosen forum." (Doc. No. 28 at 1360.)

Plaintiffs' brief in support of the motion to transfer includes one paragraph addressing § 1404(a) and one paragraph addressing § 1406(a). (*See* Doc. No. 26 at 1345–46.) While the paragraph discussing § 1406(a) cites a single case from the Middle District of Georgia, and the paragraph discussing § 1404(a) cites a single case from the Southern District of Georgia, neither paragraph addresses how the interest of justice weighs in favor of transfer. (*See id.*) Accordingly, Plaintiffs have not demonstrated that the interest of justice weighs strongly in favor of transfer, as they must to carry their burden. Additionally, because Plaintiffs have failed to state a claim against KeyBank, this motion is moot with respect to KeyBank. As such, Plaintiffs' motion to transfer is DENIED.

### III.    CONCLUSION

For the reasons discussed above, KeyBank's motions to dismiss (Doc. Nos. 9, 21) are GRANTED. The counts against KeyBank are DISMISSED with prejudice. Plaintiffs' motion to transfer (Doc. No. 26) is DENIED.


IT IS SO ORDERED.

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

Date:  July 26, 2024